**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNIVERSITY HOSPITALS**<br>**HEALTH SYSTEM,** | ) | **CASE NO. 1:15 CV 2461** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **POHL INC. OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |

This matter is before the Court on the Motion to Quash Deposition of David Mallory, P.E. (Docket #53) filed by Defendant, Pohl Inc. of America ("Pohl").

## I.    Factual and Procedural Background.

This case was originally filed by Plaintiff, University Hospitals Health System ("UHHS"), on October 27, 2015. On December 1, 2015, Pohl removed the case to this Court. On December 10, 2015, UHHS filed its First Amended Complaint. (Docket #5.)  UHHS seeks to recover the costs to remove and replace exterior cladding – Faveton Bersal terra cotta rainscreen panels, manufactured for Pohl in June 2009 by Faveton/Ceramicas Casao ("Faveton") – purchased by Pohl for construction of the new Ahuja Medical Center in Beachwood, Ohio ("the Project").  Pohl

was selected by the Project Construction Manager, Gilbane Building Company, to supply the Panels for the Project and, in its Proposal, made certain representations regarding the characteristics and quality of the Panels and provided certain warranties.

As alleged by UHHS, Pohl delivered the Panels to the Project from July 19, 2009 to August 19, 2009. The Panels were installed by Cleveland Marble from July to December 2009. During original construction and following substantial completion of the project, some of the Panels showed signs of spauling and cracking and, although some were replaced, the problems continued. On March 2, 2010, Cleveland Marble's Project Manager, Daniel Ulmer, reported to Pohl's Chief Executive Officer, Udo Clages, that "a lot more cracked tile [was] being noticed."

As set forth by UHHS, the timeline of Pohl's action and response to the cracking Panels is as follows:

> On March 8, 2010, Luis Matos of Faveton advised Pohl that Faveton's quality manager allegedly analyzed the pictures of the cracked Terra Cotta Panels that Pohl had forwarded to Faveton and determined the cracks were not caused by Faveton's manufacturing process. (Exhibit A-2, ¶ 6.) On March 10, 2010, Pohl reported to Faveton that Cleveland Marble observed 26 additional cracked Terra Cotta Panels and is "expecting that [Pohl/Faveton] take measures to analyze and resolve the problem immediately, before the final punchlist will be done." (Id.) By April 23, 2010, Cleveland Marble reported to Pohl that they had replaced 52 tiles to date and will be replacing another 33 cracked Terra Cotta Panels on the southeast elevation of the building. (Exhibit A-3, ¶ 7.)

> In response, on April 24, 2010, Udo Clages of Pohl instructed his Controller Kimberly Reepmeyer ("Ms. Reepmeyer") to "advise our insurance company Lockton of the current situation with the cracked tiles of Faveton. Ask them to provide a list of technical experts who can assist us in finding out the reasons for the cracking tiles." (Id.)

> On April 26, 2010, Pohl's controller contacted Lindsey Harlan, Account Executive for Lockton Insurance Companies ("Ms. Harlan") and requested a technical expert to assist Pohl in identifying the reason for the cracks in the Terra Cotta Panels. (Exhibit A-4, ¶ 8.) Ms. Harlan, in turn, contacted Joerg Schroeder of Pohl's German parent company ("Mr. Schroeder") to inquire how Pohl's German

Product Recall policy would respond to the cracks in the Terra Cotta Panels. (Id.) Ms. Harlan reported to Mr. Schroeder that Faveton allegedly tested the Terra Cotta Panels and determined that their product was allegedly not defective. (Id.) Ms. Harlan further advised Mr. Schroeder that Lockton Insurance Companies "put Pohl in touch with an engineer for a second opinion of the product, at their request, in hopes to determine if the tiles are defective or if the cracking is due to installation." (Id.)

Ms. Harlan recommended that Pohl contact David S. Mallory, Jr., P.E. of Engineering Design & Testing Corp. ("Mr. Mallory"). (Id.) On May 4, 2010, Pohl's Project Manager Dana Johnson contacted Mr. Mallory and requested information related to Mr. Mallory's experience working on similar tile cracking projects. (Exhibit A-5, ¶ 9.) On May 7, 2010, Mr. Mallory proposed to Pohl's Project Manager Dana Johnson a $3,500.00 budget to conduct a site inspection, perform materials testing, if required, and prepare a written report. (Id.) Specifically, Mr. Mallory planned to analyze the fracture surface of the cracked tiles with a microscope to identify whether there were voids in the material and determine whether the cracks were caused from a single occurrence or gradually over time. (Id.)

On May 10, 2010, Lockton Insurance Companies advised Ms. Reepmeyer that they would not attend the site inspection with Mr. Mallory but would like a copy of his report. (Exhibit A-6, ¶ 10.) On May 12, 2010, Ms. Harlan confirmed to Ms. Reepmeyer that if deemed a product defect Pohl's German Product Recall policy would cover the cost of replacing the defective tiles and installing non-defective replacements. (Exhibit A-4, ¶ 8.) Mr. Schroeder further advised that Pohl should "wait to hear from the engineer conducting the inspection to determine the cause of loss before taking any steps." (Id.)

On May 13, 2010, Mr. Mallory conducted a site inspection of the Terra Cotta Panels at the Project along with Pohl's Project Manager Dana Johnson and Cleveland Marble's Project Manager Daniel Ulmer. (Exhibit A-7, ¶ 11.) Dana Johnson reported in a follow-up email that Mr. Mallory would require 2 weeks to deliver his report, including tile testing. (Id.)

On June 8, 2010, Mr. Mallory forwarded to Pohl's Project Manager Dana Johnson a report dated June 7, 2010 summarizing his initial findings from the May 13, 2010 site inspection. (Exhibit A-8, ¶ 12.) Initially, Mr. Mallory reported that the "shared characteristic between the damaged tile inspected is a vertical deformation (sag) along the lower drip edge. (Id.) Ms. Reepmeyer forwarded Mr. Mallory's summary report to Pohl's insurer Lockton Insurance Companies. (Exhibit A-9, ¶ 13.)

On June 12, 2010, Pohl sent Mr. Mallory's June 7, 2010 report to Luis

Matos at Faveton and Javier Casao at Ceramicas Casao. (Exhibit A-10, ¶ 14.) Pohl advised Mr. Matos and Mr. Casao "there is a major risk for further continued damages to the tiles, resulting in the replacement of the damaged tiles." (Id.) Pohl requested that Faveton and Ceramicas Casao "review the report and let us have your comments and proposal of how to remedy the damages." (Id.) Pohl further requested that Faveton and Ceramicas Casao visit the Project with Pohl to discuss "the actions to be taken from here." (Id.)

On June 23, 2010, Mr. Mallory produced to Pohl his June 22, 2010 report summarizing his findings and conclusions on the root cause of the tile cracking. (Exhibit A-11, ¶ 15.) Mr. Mallory concluded that the root cause of the tile cracking is a manufacturing defect based on the damaged Terra Cotta Panels containing the following defects: (i) a vertical deformation (sag) in the lower edge of the Terra Cotta Panels that allows water to become trapped in the tile and freeze; and (ii) the excursion opening in the lowest edge of the Terra Cotta Panels is smaller in size and circular, rather than tear-drop shaped, to allow water to shed from inside the Terra Cotta Panels. (Id.) On June 25, 2010, Pohl furnished Mr. Mallory's June 22, 2010 report to Lockton Insurance Companies to begin the insurance claim process. (Exhibit A-12, ¶ 17.)

UHHS states that Pohl represented that the deterioration was a natural characteristic of terra cotta materials, rather than a defect in design, manufacture or use. However, UHHS alleges the damage to the Panels was caused by "freeze-thaw distress" and, therefore, the Panels failed to fulfill their essential purpose to act as a rainscreen during typical northeast Ohio winter weather conditions. UHHS asserts that the damage to the Panels caused by freeze-thaw distress constitutes a material breach of the Purchase Agreement between Cleveland Marble and Pohl, and a material breach of the Special Warranty and Express Warranties set forth in Pohl's Proposal.

## II.     First Amended Complaint/Subpoenas.

On October 26, 2015, UHHS entered into an Assignment Agreement and Assumption of Contract and Contract Rights with Gilbane and Cleveland Marble related to the Panels and, on December 1, 2015, filed this lawsuit against Pohl to recover the costs to remove and replace the Panels. UHHS filed its First Amended Complaint on December 10, 2015, asserting claims for

Breach of Express Warranties Under the UCC R.C. 1302.26 (Count I); Breach of Implied Warranty of Merchantability Under the UCC R.C. 1302.27 (Count II); Breach of Implied Warranty of Fitness for a Particular Purpose Under the UCC R.C. 1302.28 (Count III); and, Negligent Misrepresentation. (Count IV).

On October 4, 2017, UHHS served a subpoena *duces tecum* on Mr. Mallory. Pohl did not object to the subpoena *duces tecum*. On October 16, 2017, Mr. Mallory produced his Project file to UHHS, including his June 7, 2010 Initial Report and his June 22, 2010 Final Report. On January 26, 2018, UHHS served Mr. Mallory with a Subpoena for his Deposition, seeking discovery of "facts related to his 2010 engagement when he was retained" by Pohl. UHHS states that it "does not seek to discovery fact related to any . . . future engagement by Pohl." (Docket #54 at p. 14.)

## III. Motion to Quash.

On February 14, 2018, Pohl filed its Motion to Quash Deposition of David Mallory, P.E. (Docket #53.) Citing Fed. R. Civ. P. 26(b)(4), Pohl argues that Mr. Mallory is a consulting expert, not a testifying expert and, therefore, that UHHS is not entitled to his opinions. Pohl states that Mr. Mallory was retained by Pohl "pre-suit to investigate the cause of the identified issue with the tile facade . . . and issued a preliminary report." (Motion to Quash at p. 5.) Pohl states it "intends to use Mr. Mallory as a consulting expert at the present time." (Id.) Additionally, Pohl requests a protective order, prohibiting UHHS from contacting Mr. Mallory.

On February 28, 2018, UHHS filed its Brief in Opposition to Pohl's Motion to Quash. (Docket #54.) UHHS argues that Mr. Mallory is a fact witness, retained by Pohl in May 2010, in the ordinary course of Pohl's business, for a non-litigation purpose. UHHS states that Pohl

retained Mr. Mallory during construction to investigate Pohl's warranty responsibility for the repair and to determine whether Pohl had insurance coverage, providing a detailed timeline of events leading up to Mr. Mallory's involvement during construction. UHHS argues, "There is absolutely no evidence, and therefore no inference, to conclude that Pohl retained Mr. Mallory because of Pohl's subjective anticipation of actual or impending litigation or that such subjective anticipation of litigation in May, 2010 was even objectively reasonable." (Docket #54 at p. 11.) UHHS notes that nowhere in Pohl's communications with Lockton Insurance, Mr. Mallory, Pohl's German Parent Company, or Faveton, is there any mention of litigation or even the potential of litigation regarding the cracked Panels. UHHS argues that Pohl was simply fulfilling its contractual obligation to perform a punch list and warranty repairs on the Project. Further, UHHS argues that Pohl waived any asserted work product privilege by voluntarily producing Mr. Mallory's June 7, 2010 and June 22, 2010 Reports to UHHS and others.

Pohl filed its Reply Brief on March 8, 2018. (Docket #55.) Pohl restates its assertion that it hired Mr. Mallory in 2010 in anticipation of potential claims and litigation, argues that it in no way waived its right to contest Mr. Mallory's deposition by producing Mr. Mallory's Reports and, therefore, that Pohl's Motion to Quash Mr. Mallory's subpoena should be granted. Pohl also cites case law interpreting Fed. R. Civ. P. 16(b)(3), arguing Mr. Mallory's findings in 2010 constitute privileged "work product."

On March 19, 2018, UHHS filed a Motion for Leave to File Motion to Strike, or in the Alternative, Supplemental Brief in Support of Brief in Opposition to Pohl's Motion to Quash. (Docket #57.) UHHS argues that Pohl is not permitted to raise new arguments in its Reply Brief – in this case that Mr. Mallory's 2010 Initial and Final Reports are entitled to attorney work

product protection – and that the evidence demonstrates Mr. Mallory was not retained in 2010 in anticipation of litigation and that the Reports are not entitled to work product protection under Fed. R. Civ. P. 26(b)(3).

## IV.    Discussion

Fed. R. Civ. P. 26(b)(4) provides, in pertinent part, as follows:

(D) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions of the same subject by other means.

Pohl asserts that Mr. Mallory was consulted for trial preparation and, absent a showing of undue hardship or exceptional circumstances, UHHS cannot take Mr. Mallory's deposition. Pohl states Mr. Mallory was retained by Defendant pre-suit to investigate and issued a Report and that Pohl intends to use Mr. Mallory as a consulting expert "at the present time."

Fed. R. Civ. P. 26(b)(4)(D) "essentially extends the work product protection codified in Rule 26(b)(3) to facts known and opinions held by non-testifying, consulting experts." *Lindon v. Kakavand*, No. 5:13-CV-26, 2014 U.S. Dist. LEXIS 198818, at *3 (E.D. Ky. April 29, 2014.) "Both provisions protect an expert's findings made and or materials prepared 'in anticipation of litigation.'" *Id.*

The burden of proving an expert has been retained in anticipation of litigation rests with the party asserting the privilege. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. Ky. 2006). Thus, Pohl must prove that Mr. Mallory was retained or specially employed "because of

the prospect of litigation." *Id.* at 593. Experts retained in the ordinary course of business or for "non-litigation purposes" are not protected by the work-product doctrine and although documents prepared by an expert may help prepare for litigation, they do not qualify as work product if they were not created because of actual or impending litigation. *Id.* Under *Roxworthy*, the Court must consider "(1) whether the document was created because of a party's subjective anticipation of litigation, as contrasted with ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* at 594. If both elements are proven, the burden shifts to UHHS to demonstrate undue hardship or exceptional circumstances.

Pohl has fallen short of satisfying its burden to demonstrate that Mr. Mallory was retained or specially employed, or that Mr. Mallory's Reports were prepared, because of the prospect of litigation. UHHS seeks to depose Mr. Mallory "to discover facts related to his 2010 engagement" when he was hired by Pohl and prepared Reports which have already been voluntarily provided by Pohl to UHHS. Pohl fails to offer an affidavit or equivalent proof showing that Mr. Mallory was retained as an expert in anticipation of litigation. The correspondence cited by UHHS clearly demonstrates that at the time Mr. Mallory was retained in 2010, there was no mention, discussion or suggestion that litigation was imminent or even a possibility. Mr. Mallory was retained at the direction of Mr. Udo Clages, Pohl's Chief Executive Officer, not by Pohl's attorneys, during construction, to examine the cracking Panels in light of Pohl's warranty obligations under the contract. The evidence presented to the Court demonstrates, as stated by UHHS, that Mr. Mallory was retained for ordinary business purposes – to respond to the panel test results, determine Pohl's punch list and warranty obligations and, if necessary, begin the insurance claim process.

Accordingly, Pohl has failed to sufficiently demonstrate that UHHS should be prevented

from deposing Mr. Mallory.

**V.    Conclusion**

For the foregoing reasons, Pohl's Motion to Quash (Docket #53) is hereby DENIED

IT IS SO ORDERED.

_Donald C. Nugent_
Donald C. Nugent
United States District Judge

DATED:  _March 23, 2018_